IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD JACKSON-EL, #227938 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RWT-06-2548 |
| JAMES V. PEGUESE, et al. | * | |
| Defendants. | | |
| | * | |

******

## MEMORANDUM OPINION

Before the Court is a pro se complaint filed under 42 U.S.C. §1983 by Richard Jackson-El, a prisoner at the Jessup Correctional Institution (JCI). Defendants, James V. Peguese, Warden, Correctional Medical Services, Inc. ("CMS"), and Gedion Atunafu, M.D. by their counsel have filed dispositive Motions to Dismiss or for Summary Judgment with supporting exhibits.[1] Upon review of the pleadings, exhibits, and applicable law, the Court will grant Defendants' Motions for Summary Judgment.[2]

Defendants rely on materials beyond the scope of the Complaint, and their motions shall be construed pursuant to Fed R. Civ. P. 56. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, the court will grant Defendants' Motions for

---

[1] Warden Peguese is represented by counsel from the Office of the Attorney General of Maryland. Correctional Medical Services, Inc. and Gedion Atunafu, ( "Medical Defendants") are represented by private counsel.

[2] The court initially construed the Complaint as a §1983 Motion for Emergency Injunctive relief, and required a show cause response from the Office of the Maryland Attorney General. The court denied emergency injunctive relief on November 7, 2006. Incorporated by reference in this case are the State's earlier response and supporting exhibits. Paper No. 18.

Summary Judgment.[3]

## I. Background

Plaintiff filed this action on September 29, 2006, alleging that he had been deprived of medically prescribed meals for his bleeding ulcer. Additionally, he claimed that at times, he was not provided any meals. He requests compensatory damages in the amount of $1,000 from each defendant for each day that he was denied his "medically prescribed meals from September 8, 2006, until this matter is resolved."

According to J. Hampson, Correctional Dietary Manager at the Maryland House of Correction, Plaintiff was placed on a cardiovascular diet with soft mechanical consistency. Hampson stated that when there were soft foods on the daily menu, these items were served to Plaintiff. Plaintiff's food also is chopped according to the order for a soft mechanical diet. Plaintiff informed Hampson that he had difficulty chewing most of the foods that were served to him and that he enjoys tuna fish. On one occasion, Plaintiff told Hampson that he wanted mayonnaise with his tuna fish and was given mayonnaise packets. Plaintiff made other various dietary requests, including that he did not want to eat tuna all the time, and that he could not eat beef. Hampson stated that in response to these requests, Plaintiff was provided ground turkey. Plaintiff refused to eat the turkey, claiming it was processed meat. Hampton explained the turkey was not processed, but Plaintiff refused to eat it. Several times after Plaintiff refused to eat the meal provided, Hampson

---

[3]The court will deny Plaintiff's pending motion for appointment of counsel. Plaintiff has failed to show particular need or exceptional circumstance sufficient to warrant appointment of counsel. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1974). Plaintiff was provided notice of Defendants' pending dispositive motions on January 17, 2007, and February 22, 2007. [Papers 14 and 20]. Plaintiff has been granted two extensions of time to file a reply. The court will deny Plaintiff's pending motion for a third extension of time to file a reply, as he fails to specify good cause for further delay.

asked Plaintiff whether there was anything else he could eat. Sometimes Plaintiff requested, and was provided with, cookies, milk, and cereal. Plaintiff was also given boiled eggs per his request.

On September 3, 2006, Plaintiff was brought to the dispensary complaining he had been coughing or vomiting blood and had abdominal pain and a rapid pulse. Counsel for the Medical Defendants has submitted the declaration of Dr. Atnafu and verified exhibits, including Plaintiff's medical records. According to Dr.Atnafu's declaration, Plaintiff was observed in the Dispensary with no further bleeding noted. Dr. Atnaful was notified of Plaintiff's continued pain and rapid pulse that afternoon and he arranged to immediately send Plaintiff to the emergency room at the Baltimore-Washington Medical Center (BWMC).

At BWMC, an upper endoscopy of the Plaintiff showed a non-bleeding ulcer in a hiatal hernia. The surgeon who performed the endoscopy concluded that the likelihood of re-bleeding from the ulcer was low. On September 8, 2006, Plaintiff was discharged from BWMC and admitted to the dispensary at the Maryland House of Correction for observation and treatment. Dr. Atnafu ordered a low salt, soft mechanical diet for Plaintiff because he had a history of hypertension (high blood pressure).[4]

While in the dispensary, Plaintiff did not complain about his meals until September 14, 2006. On that date, Plaintiff was found lying unresponsive on the floor. Plaintiff did not respond when the physician's assistant called his name, but "jumped" when ammonia salts were used. Plaintiff then began to talk, stating that: 1) he was not getting his soft mechanical diet; 2) he was getting other foods that he refused to eat; and 3) he had not eaten for four days, and as a result was weak and had fainted. The nurse who responded to this incident recorded that five minutes after Plaintiff was

---

[4] This is the same diet proscribed for Plaintiff prior to his admission to BWMC.

revived, he was up and making his bed. Plaintiff showed no distress for the remainder of the nurse's shift. Noting that Plaintiff was alert and appeared in no distress, the physician's assistant ordered continuing the diet regimen and encouraging Plaintiff to eat his meals.

No further complaints were noted until September 25, 2006, when Plaintiff, who was still being treated in the dispensary, refused to eat a turkey sandwich. Plaintiff stated that he did not eat processed meat. Instead, an officer brought cereal and milk which Plaintiff ate. On September 26, 2006, Plaintiff returned to his housing unit.

Dr. Atnafu's declaration states that Plaintiff's hypertension and pain were well-controlled and there was no ulcer-related bleeding. Plaintiff never complained directly to Dr. Atnafu, who was at the dispensary every day except for weekends and between September 13, to September 17, 2006.

## II. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

4

514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to. . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**III. Analysis**

**A. Plaintiff Has Failed To Demonstrate A Cognizable Constitutional Claim Against Warden Peguese and CMS**

Prison officials have a duty under the Eighth amendment to provide humane conditions of confinement to those in their custody. This includes ensuring that prisoners are provided adequate food, clothing, and shelter. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to state a viable conditions of confinement claim an inmate must show that: 1) the conditions were objectively serious enough to pose a substantial risk of serious harm, and 2) the prison official's state of mind was one of "deliberate indifference." *Id.* at 834.

In this case, the verified records show that Plaintiff was given a medically-recommended cardiovascular, soft mechanical consistency diet. Further, the exhibits show instances when prison staff tried to provide appropriate substitutions according to Plaintiff's individual taste preferences. There are no facts presented here to suggest objectively serious conditions posing a substantial risk of serious harm or deliberate indifference to Plaintiff's needs. Accordingly, Plaintiff's claims do not establish a constitutional violation.

**B. *Respondeat Superior* and Vicarious Liability Do Not Apply to Actions Brought**

**Under 42 U.S.C. § 1983**

As a general rule, the doctrine of *respondeat superior* or vicarious liability is inapplicable to actions filed under 42 U.S.C. §1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978). The Warden could only be liable under Section 1983 if he was specifically involved in providing Plaintiff his meals or if he promulgated an official policy which resulted in the alleged constitutional violations. *Id.* at 694. Plaintiff does not allege that Warden Peguese was either personally involved in providing his meals, nor does he challenge a facility policy. Accordingly, Plaintiff's claims do not state a valid cause of action against Warden Peguese under §1983, and Warden Peguese is entitled to summary judgment as a matter of law.

Similarly, Plaintiff's claims against defendant CMS must fail. CMS is a private corporation that has contracted with the State of Maryland to provide medical services to certain state institutions and administers medical care only through its agents and employees. Under *Monell*, CMS may not be held liable because the liability attributed to CMS is vicarious in nature and cannot be raised in a §1983 action. 436 U.S. at 691-94. Plaintiff proffers no evidence that alleged deficiencies in medical care were based on corporate policy or pattern of practice. As a matter of law, Plaintiff's claims do not state a valid cause of action against CMS under §1983 and CMS is entitled to summary judgment as a matter of law.

**C. Plaintiff's Alleged Denial of Medical Care Does Not Pass Constitutional Muster**

To state a constitutional claim under the Eighth Amendment for denial of medical care, a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to

fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U. S. at 837.

A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *Miltier*, 896 F.2d at 853. Generally, a prisoner's disagreement with medical personnel over the course of his treatment does not constitute a constitutional cause of action. *Wright v. Collins*, 766 F. 2d 841, 849 (4th Cir. 1985).

Upon review of the facts presented here, none of which is in dispute, the court finds that plaintiff has failed to demonstrate how his medical treatment amounted to deliberate indifference to his medical needs. The record shows that plaintiff was examined, kept under medical observation, and then transferred for emergency treatment after he complained of bleeding and pain and showed a rapid pulse rate. A doctor performed an endoscopy on Plaintiff. Plaintiff was then diagnosed and treated in the hospital until his discharge to the prison dispensary.

There are no records that Plaintiff lodged any medically-based food concerns. Instead, Plaintiff's complaints were based on personal food preferences. There are no facts presented here to establish that either Dr. Atnafu or CMS acted with deliberate indifference to plaintiff's medical needs, or that the treatment he received amounted to constitutionally inadequate care. In sum, there

is no cause to find constitutionally inadequate medical care.[5]

## IV. Conclusion

For the above stated reasons, the court will grant enter summary judgment in favor of Defendants and against Plaintiff. A separate order consistent with this Memorandum Opinion follows.

Date: 6/19/07

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff was provided notice of the dispositive motions pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), but has not filed a reply. The court granted has granted Plaintiff's Motions to Extend Time on several separate occasions. Plaintiff has filed no pleadings disputing the facts presented here.